**Joseph Allen GRIMES and Christina K. Grimes, Relators,**

v.

**The Honorable Frances HARRIS, District Judge, 302nd Judicial District Court, et al., Respondents.**

No. 05-85-00210-CV.

Court of Appeals of Texas, Dallas.

June 18, 1985.

R.W. "Bill" Glenn, Dallas, for relators.

George Parker, Hendricks & Parker, McKinney, for respondents.

Frances A. Harris, Dallas, pro se.

Before STEPHENS, ALLEN and McCLUNG, JJ.

STEPHENS, Justice.

Relators Joseph Allen and Christine K. Grimes ("the Grimes") apply for a writ of mandamus directing Respondent The Honorable Frances Harris to (1) enter an order setting aside the February 25, 1985 order, denying their motion to modify, in cause no. 84–8954, styled *Stillwell v. Stillwell,* and (2) enter an order modifying the February 1, 1985 decree of divorce in the same cause by deleting any reference to, and thus dismissing, infant Stillwell. Because of the emergency nature of this proceeding, by order of March 14 we conditionally granted the writ of mandamus as to Re-

spondent Harris.[1] We now state the reasons for granting the writ.

The primary question before this Court is which trial court, the 302nd Judicial District Court of Dallas County ("the Dallas court") or the 296th Judicial District Court of Collin County ("the Collin court"), had dominant jurisdiction over the infant. We hold that the Collin court obtained that jurisdiction.

The real parties in interest to this proceeding are:
1. Infant Stillwell.
2. Diana Stillwell, the mother of the infant.
3. Ransom Stillwell, the legal father of the infant. The infant was born when Diana Stillwell was still married to Ransom Stillwell.
4. Kevin Johnson, the biological father of the infant. The infant was conceived after Ransom and Diana Stillwell separated.
5. Joseph and Christina Grimes, the couple who wish to adopt the infant.

In order to adequately discuss the issue presented by this original proceeding, it is necessary to set out a chronology of the relevant events.

June 20, 1984: A divorce petition between Diana and Ransom is filed in Dallas court (cause no. 84–8954). The petition does *not* state that Diana is expecting even though, according to the record in this Court, she is approximately 2 months pregnant and knew that she was pregnant.

October 26, 1984: A petition to terminate the parent-child relationship as to Diana, Ransom and Kevin is filed by the Grimes in the Collin court (cause no. 84–054A–296).

November 12, 1984: An affidavit of status of child signed by Diana is filed in the Collin court.

An affidavit of waiver of interest in child signed by Kevin is filed in the Collin court.

January 17, 1985: The infant is born.

January 18, 1985: Affidavits of relinquishment of parental rights are signed by Diana and Ransom.

A temporary order naming the Grimes as temporary managing conservators of the infant is signed by the Collin court.

January 21, 1985: The two affidavits of relinquishment are filed in the Collin court.

January 25, 1985: The Collin court holds a hearing on the Grimes's termination petition. At the hearing, Diana and Kevin attempt to withdraw their affidavits. The Collin court takes the matter of termination under advisement.

February 1, 1985: An amended petition for divorce is filed in the Dallas court. For the first time, the petition alleges that the infant is a child of the marriage. There are no allegations or motions filed in the Dallas court regarding the pending case in the Collin court. A decree of divorce naming Diana as managing conservator of the infant is signed by the Dallas court.

February 8, 1985: A motion to modify is filed by the Grimes in the Dallas court. The motion urges the Court to delete any reference to the infant from the February 1, 1985 divorce decree on the ground that only the Collin court has jurisdiction over her.

February 25, 1985: The Grimes's motion to modify is denied.

■■■ This is not a question of continuing jurisdiction under section 11.05(e) of the Family Code. A court does not acquire continuing, exclusive jurisdiction over a child until a decree is final. TEX.FAM. CODE ANN. § 11.05(e) (Vernon Supp. 1985). *See Curtis v. Gibbs*, 511 S.W.2d 263, 266 (Tex.1974). At the time this application for writ of mandamus was filed on February 27, 1985, there was no final decree regarding the infant Stillwell. The February 1, 1985 divorce decree could not have been final before March 4, 1985. *See* TEX.R.CIV.P. 329b(a). Even when this application was heard and decided, March 13

---

1. The writ of mandamus was denied as to Respondent Holland.

and 14, respectively, there was still no final decree because we hold that the Collin court had dominant jurisdiction over the infant and the decree of divorce was therefore a nullity (as to the infant) that could not rise to the level of a final decree sufficient to clothe the Dallas court with continuing, exclusive jurisdiction over the infant. *See Cleveland v. Ward*, 116 Tex. 1, 285 S.W. 1063, 1071 (Tex.1926).

█ As stated, the issue in this case is one of dominant jurisdiction. Both the Dallas court and the Collin court have potential jurisdiction of the subject matter—custody of the infant. Obviously, however, both courts cannot exercise this jurisdiction at the same time. The general rule is that the court in which suit is first filed acquires dominant jurisdiction to the exclusion of other coordinate courts. *Curtis*, 511 S.W.2d at 267; *Cleveland*, 285 S.W. at 1070. Any subsequent suit concerning the same parties and the same controversy must be dismissed if a party to that suit calls the second court's attention to the pendency of the prior suit by a plea in abatement. *Curtis*, 511 S.W.2d at 267; *Ex parte Jabara*, 556 S.W.2d 592, 596 (Tex. Civ.App.—Dallas 1977, no writ).

█ It is not enough, however, that a suit just be the first suit filed. The mere filing of the petition is not alone sufficient to oust another court in which the same suit is subsequently filed of dominant jurisdiction. *V.D. Anderson Co. v. Young*, 128 Tex. 631, 101 S.W.2d 798, 800–801 (1937). To acquire dominant jurisdiction over a cause, everything and everyone necessary for the court to resolve the dispute, except the evidence, must be before the court. *See, e.g., V.D. Anderson Co.*, 101 S.W.2d at 800; *Cleveland*, 285 S.W. at 1070. This conclusion is supported by analogy to *Matter of Marriage of Allen*, 593 S.W.2d 133 (Tex.Civ.App.—Amarillo 1979, no writ). The statute under review in *Allen* was TEX.FAM.CODE ANN. § 3.21 (Vernon 1975) which provides that:

*No suit for divorce may be maintained* unless at the time suit is filed the petitioner or the respondent has been a domiciliary of this state for the preceding six-month period and a resident of the county in which the suit is filed for the preceding ninety-day period (emphasis added).

In *Allen*, a divorce case, the appellate court held that, even though suit was first filed in Lubbock County, the court in Floyd County, where the second divorce suit was filed, acquired dominant jurisdiction over the divorce because it was the first suit filed wherein *all* of the requirements of section 3.21 were satisfied. Even though the Lubbock suit was first in time, the Lubbock court could not acquire jurisdiction over the divorce suit until after the requirements of section 3.21 had been satisfied and, by then, some other court had already acquired dominant jurisdiction.

The general rule announced in *Cleveland*, and more recently in *Curtis*, has always been subject to exception. The general rule does not apply where a party is guilty of such conduct relating to the matter as to estop himself from asserting the prior active jurisdiction of a court in which a suit is first filed over another court in which a suit is subsequently filed involving the same subject matter. *Johnson v. Avery*, 414 S.W.2d 441, 443 (Tex.1966); *V.D. Anderson*, 101 S.W.2d at 800. The purpose of the general rule is to prevent "that conflict in the exercise of judicial power ... which we believe was never contemplated under our judicial system." *Cleveland*, 285 S.W.2d at 1071. The rule is also intended to prevent unseemly, expensive and dangerous conflicts of jurisdiction and of process. *Id.*

█ Applying these requirements to the facts of the present case, at the time it was filed, the original divorce petition did not allege that Diana was pregnant.[2] Between the time that the original divorce petition was filed and the date when the Grimes's petition to terminate the parent-child rela-

---

2. *See* TEX.FAM.CODE § 3.55(a) (Vernon 1975). "The petition shall state whether or not there are children under 18 years of age born or adopted of the marriage."

tionship was filed, no amendment to the divorce petition (alleging that Diana was pregnant) was ever filed. Thus, when the Grimes's petition to terminate was filed, the requirement of section 3.55(a) of the Family Code had still not been satisfied and the issue of the custody of the infant had not been joined in the suit in the Dallas court. The issue of the infant's custody, however, was first joined in the Collin court with the filing of the petition to terminate on October 26, 1984.

We hold that this case is an exception to the general rule of *Cleveland*. The Stillwells failed to timely inform the Dallas court that there was to be, or was, another child of the marriage before the Collin court invested valuable judicial time in determining all of the issues related to custody of the infant, save final determination of whether the Stillwells' parental rights should be terminated. It was not until *after* the Collin court entered orders regarding the managing conservatorship of the infant that the Stillwells informed the Collin court of the pending divorce suit. More importantly, the Stillwells allowed the Dallas court to enter an order naming Diana as managing conservator of the infant, in direct conflict with the Collin court's order of 13 days earlier which named the Grimes as the infant's managing conservators, and they did so without informing the Dallas court of the termination suit or the Collin court's order.[3] The Dallas court learned of the termination suit 7 days after it signed the divorce decree and then only because the Grimes filed a motion to modify.

Because of these actions and inactions, the Stillwells cannot be allowed to now claim that only the Dallas court had jurisdiction. To allow such a position would mean that parties to lawsuit can, by their omissions, manipulate the courts by sitting in silence while sister courts issue orders regarding the same subject matter which, as here, conflict. We cannot countenance such trifling with the judicial system. The courts of this State are not to be "played off" one against the other. *See Ex parte Jabara*, 556 S.W.2d at 592.

For these reasons, we hold that the first court to acquire jurisdiction over the issue of the custody of the infant was the Collin court. The original petition which did not meet the requirements of section 3.55(a) of the Family Code and the failure of the parents to ever join the termination suit with the divorce suit[4] did not activate the jurisdiction of the Dallas court over the infant to the exclusion of the jurisdiction already activated in the Collin court by the filing of the termination petition. Thus, when the Grimes filed their motion to modify in the Dallas court raising the pendency of a second, subsequent suit, the Dallas court had no authority to do anything but dismiss the infant from the divorce suit. *Ex parte Jabara*, 556 S.W.2d at 596. The trial court's action of refusing the Grimes's motion to modify was, therefore, subject to mandamus. *Curtis*, 511 S.W.2d at 265.

Writ conditionally granted.[5]

3. Contrary to the Stillwells' assertion, these omissions must be charged against the Stillwells because only they were parties to *both* the Collin suit and the Dallas suit.

4. Based on the limited facts of this case, we are of the opinion that the rule stated in section 3.55(b) of the Family Code does not control our holding. We hold, by analogy to section 3.55(c) of the Family Code and consistent with the legislature purpose of the Family Code as a whole, that the provisions of section 3.55(b) are applicable only when the parties to a divorce suit file a motion to transfer in the court where the divorce is pending. No such motion was

ever filed in this case. Diana, assuming that this case was governed by section 3.55(c), suggested that the burden of filing a motion to transfer should be on the Grimes. This position is without merit because only the parents of a child are parties to both the divorce suit and the termination suit and it is quite possible that the parties adopting a child via a termination suit may not know the child's parents or that they are in the process of getting divorced.

5. We note that Respondent Harris immediately complied with this Court's March 14 order and that the Stillwells' writ of prohibition to the Supreme Court was denied.