**Connie Doreen RAMSEY, Appellant,**

v.

**Andrew Bascome RAMSEY, Appellee.**

No. 03–99–00476–CV.

Court of Appeals of Texas, Austin.

May 25, 2000.

---

Sylvia Griffith Sanders, Austin, for appellant.

Cynthia Borgfeld Smith, Georgetown, for appellee.

Before Justices JONES, KIDD and PATTERSON.

MACK KIDD, Justice.

In June 1994, appellant Connie Ramsey and appellee Andrew Ramsey were divorced in the 13th District Court of Navarro County (the "Navarro Court"). The final decree of divorce divided the couple's community property and named Andrew sole managing conservator of Matthew, the Ramseys' only child. The court designated Connie possessory conservator and ordered her to pay Andrew monthly child support. Although the record is incomplete, it appears that the couple then lived apart for approximately two years, during which time Andrew had sole custody of Matthew. At some point during 1996, Andrew and Connie reconciled and resumed living together in the central Texas area. Then in June 1999, Andrew left Connie

unexpectedly and moved to Plano, taking Matthew with him.

Connie proceeded to file an application for writ of habeas corpus in Williamson County Court at Law No. 1 (the "Williamson Court") to compel Andrew to relinquish custody of Matthew. Citing the terms of a 1991 order that the Williamson Court had rendered in a suit brought by the attorney general eight years earlier (the "SAPCR order"), Connie maintained that she was entitled to custody of Matthew as his managing conservator. Connie contended that because of the 1991 SAPCR order, the Williamson Court was the court of continuing, exclusive jurisdiction of all matters affecting Matthew and that the Navarro Court lacked jurisdiction of all issues involving Matthew's custody and support. The Williamson Court disagreed and dismissed appellant's application for lack of jurisdiction, finding that the Navarro Court had jurisdiction of all matters affecting Matthew. On appeal, appellant argues that the Williamson Court erred in dismissing her application, and she requests a writ of mandamus directing the court to issue a writ of habeas corpus compelling Andrew to relinquish custody of Matthew. We will affirm the order of dismissal.

## BACKGROUND

Connie Ramsey and Andrew Ramsey married in 1989. The following year, Connie gave birth to the Ramsey's only child, Matthew. Within one year of Matthew's birth, Andrew and Connie separated; it is unclear from the record, though, whether their separation was due to personal differences or economic necessity.[1] At some point Connie applied for and began receiving state aid for Matthew's support. How-

ever, no suit for divorce was filed, and no other legal action relating to Matthew's welfare was initiated. On April 2, 1991, the attorney general filed a suit affecting the parent-child relationship [2] in the Williamson Court, seeking to recover from Andrew $528 of aid that the State had paid Connie for Matthew's support. Both Connie and Andrew waived service of citation in that suit, and neither filed pleadings requesting affirmative relief. To facilitate our discussion, we present a chronology of the procedural events that followed:

**June 28, 1991:**

The Williamson Court issued an agreed judgment in the attorney general's suit, ordering Andrew to reimburse the State for the $528 of aid Connie had received for Matthew's support. The court included in its judgment a standard possession order naming Andrew possessory conservator and ordering him to pay Connie, whom the court named Matthew's managing conservator, future child support in the amount of $250 per month. No reporter's record of this proceeding was preserved.

**June 29, 1992:**

Connie filed for divorce in the Navarro Court. In her petition, Connie represented to the court that there were "no court-ordered conservatorships, court-ordered guardianships, or other court-ordered relationships affecting the child."

**July 8, 1993:**

The Navarro Court dismissed Connie's divorce suit for want of prosecution.

**April 19, 1994:**

Andrew filed an original petition for divorce in the Navarro Court. Connie was served with process. In his petition, Andrew *also* represented to the court that

---

1. The Ramseys dispute the nature of and reason for their separation. Andrew contends that to support the family, he accepted a job that required him to leave town and remain separated from Connie and Matthew for extended periods. Connie, on the other hand, maintains that it was a "legal separation."

2. A suit affecting the parent-child relationship (a "SAPCR") is a "suit filed as provided by this title in which the appointment of a managing conservator or a possessory conservator, access to or support of a child, or establishment or termination of the parent-child relationship is requested." Tex. Fam.Code. Ann. § 101.032(a) (West 1996).

there were "no court-ordered conservatorships, court-ordered guardianships, or other court-ordered relationships affecting the child."

**June 21, 1994**

The Navarro Court rendered a default judgment after Connie failed to answer or appear at trial. The final decree of divorce named Andrew sole managing conservator and designated Connie possessory conservator. Connie was ordered to pay Andrew monthly child support in the amount of $50 per month.

**1994–1996:**

Andrew and Connie lived apart while Andrew had sole custody of Matthew.

**July 1996:**

Connie and Andrew reconciled. Andrew and Matthew moved to Travis County and resumed living with Connie.

**June 10, 1999:**

Andrew left Connie and moved to Plano, taking Matthew with him.

**July 23, 1999:**

Connie filed an application for writ of habeas corpus in the Williamson Court seeking to regain custody of Matthew. In support of her application, Connie cited the Williamson Court's 1991 SAPCR order, which she contends conferred upon the Williamson Court continuing, exclusive jurisdiction of all matters affecting Matthew. Connie sought to enforce the conservatorship provisions of the 1991 SAPCR order, reasoning that the conservatorship provisions of the Navarro Court's final divorce decree were void.

**August 2, 1999:**

The Williamson Court dismissed Connie's application for lack of jurisdiction, finding that the Navarro Court possessed continuing jurisdiction of all issues involving Matthew. This appeal followed.

---

3. *See* Tex. Const. art. V, § 8; Tex. Gov't Code Ann. §§ 24.007, .601 (West 1988); Tex.

## DISCUSSION

At issue in this case is the validity of the conservatorship provisions of the 1994 divorce decree rendered by the Navarro Court. We must determine whether the 1991 SAPCR order rendered the child support and custody provisions of the 1994 Navarro Court's divorce decree void *ab initio*. In the event we conclude that the divorce decree's conservatorship provisions are a nullity, appellant requests a writ of mandamus directing the Williamson Court to issue a writ of habeas corpus compelling Andrew to relinquish custody of Matthew.

At the outset, it is important to note that the 1991 SAPCR order on which appellant relies was the product of an action initiated by a third party, the attorney general, for the primary purpose of recovering state funds paid to Connie for Matthew's support. To dispense with the need for any further grants of state aid throughout the duration of the Ramseys' separation, the Williamson Court named Andrew possessory conservator and ordered him to pay monthly child support of $250 to Connie, whom the court named Matthew's managing conservator. *See* Tex. Fam.Code. Ann. § 153.005(a) (West 1996) (providing that before or upon separation, "the court shall appoint at least one managing conservator"). No suit for divorce was pending at that time, and the conservatorship provisions were never a point of contention among the parties. Thus, the issue of conservatorship was merely ancillary to the primary purpose of the State's suit, which was to secure reimbursement of state money.

■ With this in mind, we consider appellant's contention that the conservatorship provisions of the 1994 divorce decree are void because of the Williamson Court's 1991 SAPCR order. While the Navarro Court certainly had potential jurisdiction of the subject matter, *i.e.*, child custody and support issues incident to suits for divorce,[3] appellant contends that by virtue

---

Fam.Code Ann. § 6.406 (West 1998); *see also*

of the 1991 SAPCR order, the Williamson Court acquired and continues to retain continuing, exclusive jurisdiction of all matters affecting Matthew. Therefore, she maintains that the conservatorship provisions of the 1994 divorce decree are a nullity and that the Williamson Court erred in dismissing for lack of jurisdiction her application for writ of habeas corpus. We disagree for the following reasons.

We begin by noting that despite being served with citation in the 1994 suit for divorce, appellant defaulted after failing to answer or appear at trial. Consequently, appellant never challenged the jurisdictional allegations set forth in Andrew's petition. Nor did she ever attempt to challenge the judgment's validity through a motion for new trial, direct appeal, or bill of review. Rather, appellant allowed the judgment to stand for approximately five years before seeking to have it declared void in a habeas corpus proceeding. Finally, we observe that appellant represented to the same court in her own petition for divorce in 1992 that there were "no court-ordered conservatorships, court-ordered guardianships, or other court-ordered relationships affecting the child."

■ In essence, appellant seeks to collaterally attack the child support and custody provisions of the 1994 divorce decree, an otherwise valid final judgment, almost five years after the divorce decree became final and approximately eight years after the 1991 SAPCR order was rendered. A collateral attack, unlike a direct attack, does not attempt to secure the rendition of a single, correct judgment in the place of the former judgment. *See Austin Indep. Sch. Dist. v. Sierra Club,* 495 S.W.2d 878, 881 (Tex.1973); *Holloway v. Starnes,* 840 S.W.2d 14, 18 (Tex.App.— Dallas 1992, writ denied). Rather, it is an attempt to avoid the effect of a judgment in a proceeding brought for some other purpose. *See Employers Cas. Co. v. Block,* 744 S.W.2d 940, 943 (Tex.1988); *Austin Indep. Sch. Dist.,* 495 S.W.2d at

*Grimes v. Harris,* 695 S.W.2d 648, 651 (Tex.

881. In a collateral attack, we are to presume that the judgment under attack is valid. *See Stewart v. USA Custom Paint & Body Shop, Inc.,* 870 S.W.2d 18, 20 (Tex.1994); *White v. White,* 142 Tex. 499, 179 S.W.2d 503, 506 (1944). Here, appellant seeks to avoid the effects of the conservatorship provisions of the 1994 divorce decree by implementing the terms of the 1991 SAPCR order.

### Void or Voidable Divorce Judgment?

It is critical that we distinguish judgments that are *void* from judgments that are merely *voidable.* We are not alone in observing that there has been much laxity in opinions with respect to the use of the terms "void" and "voidable," as applied to final judgments. *See, e.g., Perry v. Copeland,* 323 S.W.2d 339, 343 (Tex.Civ.App.— Texarkana 1959, writ dism'd); 47 Tex. Jur.3d *Judgments* § 73 (1986). The cases appellant cites in support of her argument are no exception. *See infra* pp. 554–55.

■ Whereas a *void* judgment may be attacked at any time and at any place by direct or collateral attack, a judgment that is *voidable* is susceptible only to a direct attack and may not be assailed collaterally. *See Browning v. Placke,* 698 S.W.2d 362, 363 (Tex.1985); *Woodfin v. Coleman,* 931 S.W.2d 383, 384–85 (Tex. App.—Austin 1996, writ denied). In the absence of a direct attack, such as by appeal, voidable judgments become final and binding and are not vulnerable to collateral attack at any time. *See Easterline v. Bean,* 121 Tex. 327, 49 S.W.2d 427, 429 (1932).

■ If a court having potential jurisdiction over a case renders a judgment that is regular on its face and recites that the court's potential jurisdiction has been invoked, then the judgment is voidable, not void, and may be set aside only by a direct attack. *See Holloway,* 840 S.W.2d at 22;

App.—Dallas 1985, no writ).

*Solomon, Lambert, Roth & Assoc., Inc. v. Kidd,* 904 S.W.2d 896, 901 (Tex.App.— Houston [1st Dist.] 1995, no writ); *Graham,* 733 S.W.2d at 377. Thus, a divorce decree that is valid on its face and has not been appealed cannot be set aside in a subsequent suit by collateral attack. *See Hardin v. Hardin,* 597 S.W.2d 347, 350 (Tex.1980); *White,* 179 S.W.2d at 506; *Jones v. Jones,* 900 S.W.2d 786, 788 (Tex. App.—San Antonio 1995, writ denied).

Here, the Navarro Court's divorce decree states in part:

> The Court finds that the pleadings of Petitioner are in due form and contain all the allegations, information, and prerequisites required by law. The Court, after receiving evidence, finds that *it has jurisdiction over this cause of action* and the parties and that at least 60 days have elapsed since the date the suit was filed. The Court finds Petitioner has been a domiciliary of this state for at least a six-month period preceding the filing of this action and a resident of the county in which this suit is filed for at least a 90–day period preceding the filing of this action. All persons entitled to citation were properly cited.

(Emphasis added.) Appellant does not dispute that this divorce judgment and the record accompanying it are regular and valid on their face. The judgment reflects that there was proper service of citation and indicates that Andrew had lived in the state and the county for the requisite periods of time.

The pleadings referenced in the judgment alleged, "There are no court-ordered conservatorships, court-ordered guardianships, or other court-ordered relationships affecting the child." [4] Because these allegations were never challenged, no further inquiry was necessary. [5] Accordingly, the court proceeded to adjudicate the conservatorship issues along with the suit for divorce, as mandated by statute. [6] Appellant chose not to appeal, and the divorce judgment became final.

Nothing in the pleadings, the judgment, or the remainder of the record indicates any basis for a lack of jurisdiction. As a district court with general jurisdiction, the Navarro Court had jurisdiction over the subject matter and potential jurisdiction over the parties. *See* Tex. Const. art. V, § 8; Tex. Gov't Code Ann. §§ 24.007, .601 (West 1988); Tex. Fam.Code Ann. § 6.406 (West 1998). Because the judgment recites a valid basis for jurisdiction and appears regular on its face, it is not void and may not be collaterally attacked. *See Hardin,* 597 S.W.2d at 350; *White,* 179 S.W.2d at 506; *Jones,* 900 S.W.2d at 788. The judgment was at most voidable, and it could only have been set aside by direct attack. Appellant chose not to appeal the judgment or otherwise challenge it by direct attack. As a result, we conclude that the Navarro Court's divorce judgment was final and not subject to collateral attack.

### The Final Order

Appellant nevertheless cites us to section 155.001(a) of the Code, which provides: "Except as otherwise provided by this section, a court acquires continuing, exclusive jurisdiction over the matters provided for by this title in connection with a child on the rendition of a *final order."* Tex. Fam.Code Ann. § 155.001(a) (West Supp.2000) (emphasis added). Appellant contends that in this case the 1991 SAPCR

---

**4.** Connie's 1992 petition for divorce included this same recitation.

**5.** The court or the parties must request from the bureau of vital statistics identification of the last court with continuing, exclusive jurisdiction of the child *only if* these facts are not alleged or are disputed by the pleadings. *See* Tex. Fam.Code Ann. § 155.101(a) (West Supp.2000).

**6.** Section 6.406 of the Family Code provides: "If the parties are parents of a child ... and the child is not under the continuing jurisdiction of another court as provided by Chapter 155, the suit for dissolution of a marriage *must* include a suit affecting the parent-child relationship under Title 5." Tex. Fam.Code Ann. § 6.406 (West 1998) (emphasis added).

order was the "final order" establishing the Williamson Court as the court of continuing, exclusive jurisdiction and that the later judgment was of no effect. We disagree.

We are presented with two orders containing conflicting provisions regarding Matthew's conservatorship. Both were at one time final, appealable judgments. However, only one of these judgments may continue to serve as the final order with regard to Matthew's conservatorship. Consequently, it is necessary to determine which order—the 1994 divorce decree or the 1991 SAPCR order—survives as the "final order" for purposes of now establishing the court of continuing, exclusive jurisdiction under section 155.001(a). *See id.*

As stated previously, the 1991 SAPCR order was the product of an action initiated by the attorney general for the primary purpose of recovering state funds paid for Matthew's support. The child support and custody provisions were merely ancillary to the main objective of the State's suit. Once the divorce decree, valid on its face, became final and was no longer vulnerable to direct attack, it superseded the 1991 SAPCR order and became the final order with regard to Matthew's custody and support. While the SAPCR order was final in the sense that it resolved all the issues raised by the pleadings and could have been appealed, its

conservatorship provisions were, under the facts of this case, intrinsically temporary in nature. Therefore, with regard to Matthew's conservatorship, the 1994 divorce decree is the final order. It necessarily follows, then, that the Williamson Court was correct in concluding that the Navarro Court is the court of continuing, exclusive jurisdiction.[7]

### Appellant's Authorities

Appellant cites a line of cases as authority for her argument that the conservatorship provisions in the divorce decree are void. *See, e.g., Alexander v. Russell,* 699 S.W.2d 209 (Tex.1985); *Kirby v. Chapman,* 917 S.W.2d 902, 907 (Tex.App.—Fort Worth 1996, no writ); *Johnson v. Pettigrew,* 786 S.W.2d 45 (Tex.App.—Dallas 1990, no writ); *Mendez v. Attorney General,* 761 S.W.2d 519 (Tex.App.—Corpus Christi 1988, no writ); *Grimes v. Harris,* 695 S.W.2d 648 (Tex.App.—Dallas 1985, no writ); *Ex parte Bowers,* 671 S.W.2d 931 (Tex.App.—Amarillo 1984, no writ). Appellant reads these cases too broadly. None ventures so far as to hold that a final divorce decree's custody provisions may be held void in a collateral attack years after its rendition on the basis of a prior SAPCR order that was never brought to the court's attention. Moreover, none involve a situation where the party bringing the collateral attack joined in representing to the trial court that there were no impedi-

---

7. It is worth noting that while, standing alone, section 155.001 may appear to establish by its strong language a rigid jurisdictional rule, the statutory scheme surrounding that provision reveals that it is designed to operate more in the nature of dominant jurisdiction or venue, rather than true jurisdiction. For instance, on a showing that a suit for divorce has been filed in another court, the court having continuing, exclusive jurisdiction of a suit affecting the parent-child relationship *must* transfer the SAPCR proceedings to the divorce court. *See* Tex. Fam.Code Ann. § 155.201(a) (West Supp.2000). The task of transferring the case is a mandatory, ministerial duty. *See Neal v. Avey,* 853 S.W.2d 707, 709 (Tex.App.—Houston [14th Dist.] 1993, writ denied); *Yates v. Gaither,* 725 S.W.2d 529, 531 (Tex.App.—Dallas 1987, no writ).

Additionally, if the court in which the divorce is pending renders a final judgment after being led by the bureau of vital statistics *to believe erroneously that no court of con*tinuing, exclusive jurisdiction existed, the first court is deemed to have lost its jurisdiction, and the divorce decree of the second court is enforceable—child custody and support issues included. *See* Tex. Fam.Code Ann. § 155.004 (West Supp.2000). This same policy is implicated in this case, although here the erroneous information was supplied by the parties, rather than the bureau of vital statistics.

In light of these provisions, we believe that the scheme employed by section 155.001 does not concern true *jurisdiction,* in the strictest sense of the word. Rather, it is more comparable to dominant jurisdiction or the rules of venue.

ments to the exercise of the court's jurisdiction.

We begin with the sole Texas Supreme Court case appellant cites in support of her argument, *Alexander v. Russell,* 699 S.W.2d at 209. In *Alexander,* the parties were divorced by judgment of the 243rd District Court of El Paso County. The father then filed a motion to modify the divorce decree's conservatorship provisions. The 243rd District Court disqualified itself from hearing the matter and, with the consent of all the parties, transferred the cause to the 327th Family District Court, which ordered that the mother remain managing conservator. Two years later, the mother filed a motion to terminate the father's parental rights in the 327th District Court, which granted the motion. On *direct appeal,* the husband complained that the 327th District Court lacked jurisdiction of the case because there had been no proper order of transfer. The supreme court agreed and reversed and remanded the case to the court with jurisdiction, the 243rd District Court.

Appellant's reliance on *Alexander* is misplaced. The critical issue in *Alexander* concerned the validity of a *transfer order* supporting a judgment that was the product of a direct appeal filed in a timely manner. *Alexander* did not involve a collateral attack whereby the issue of proper transfer was raised for the first time. Nowhere in the *Alexander* opinion does the supreme court indicate that the divorce judgment was *void.* Indeed, the Court never discusses jurisdiction. Rather, the supreme court merely determined that the attempted *transfer* was improper. *See id.* at 210. Unlike the appellant in this case, the father in *Alexander* brought his complaint by direct appeal; he did not withhold his objection and wait until years later to collaterally attack the judgment. Nor did he ever make an affirmative representation to the court that its exercise of jurisdiction was proper, as appellant has done here. More importantly, the final order establishing the court of continuing, exclusive jurisdiction was a final decree of divorce—not a pre-divorce SAPCR order.

The remaining cases appellant cites are distinguishable on similar grounds. In *Kirby v. Chapman,* the appellant also complained on direct appeal of an invalid transfer order. *See* 917 S.W.2d at 907. There, the divorce decree also served as the final order establishing the court of continuing, exclusive jurisdiction. *See id.* Likewise, the appellants in *Johnson v. Pettigrew* and *Mendez v. Attorney General* challenged the courts' judgments by direct appeal after raising their objections at trial. *See Johnson,* 786 S.W.2d at 46; *Mendez,* 761 S.W.2d at 521. It appears that the parties in both *Johnson* and *Mendez* were never married; thus, in those cases the judgments in the suits for establishment of paternity—rather than final decrees of divorce—served as the final orders establishing the court of continuing, exclusive jurisdiction. *See Johnson,* 786 S.W.2d at 45–46; *Mendez,* 761 S.W.2d at 520. Next, *Ex parte Bowers* involved an original habeas corpus proceeding whereby a father attempted to set aside a judgment holding him in contempt of court, arguing that the case was improperly transferred. *See* 671 S.W.2d at 933–34. The court of appeals held that even though the transfer order was erroneous, it was not void. And consistent with our view here, the court in *Bowers* held that the judgment rendered by the latter court was not subject to collateral attack by the father's application for writ of habeas corpus on the basis of an improper transfer. *See id.* at 936.

Finally, appellant cites us to *Grimes v. Harris. See* 695 S.W.2d at 648. However, the court in *Grimes* expressly held that the controversy there did not involve a question of continuing, exclusive jurisdiction in suits affecting the parent-child relationship. *See id.* at 650. In *Grimes,* the court was presented with two contemporaneous proceedings in two separate courts. Because no final order had been entered in either proceeding, no court of continuing, exclusive jurisdiction had been established. Thus, the question was instead one of dominant jurisdiction.

The case at bar is easily distinguishable from the cases appellant cites in support of her argument. Appellant is unable to cite us to, and our own research fails to locate, any cases where an otherwise valid final divorce decree has been successfully collaterally attacked and held void on the basis of a prior SAPCR order addressing support. The vast majority of appellant's cases involve direct appeals of, rather than collateral attacks on, judgments. They also involve disputes surrounding the validity of transfer orders where that issue was brought to the trial court's attention in a timely manner. While some of the authorities appellant cites employ language characterizing certain orders and judgments as "null" or "void," none of appellant's cases involve a situation where, as here, a final divorce decree, regular on its face, was collaterally attacked years after it was rendered on the basis of a prior SAPCR order. Nor do they involve a situation where the party seeking to have the judgment declared void joined in representing to the court that there were no impediments to the court's exercise of jurisdiction. Instead, these cases stand for the proposition that certain final decrees may be *voidable* on direct appeal.

## CONCLUSION

Because the instant case is unique and easily distinguishable from the cases on which appellant relies, we conclude that the Navarro Court is the court of continuing, exclusive jurisdiction. Accordingly, the Williamson Court did not err when it dismissed appellant's application for lack of jurisdiction. In light of our holding, we need not address appellant's second point of error requesting the issuance of a writ of mandamus instructing the Williamson Court to grant appellant her application for writ of habeas corpus. The trial court's order is affirmed.