

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-16-00049-CV

IN THE INTEREST OF E.P., A
CHILD

-----------

FROM COUNTY COURT AT LAW NO. 2 OF WICHITA COUNTY
TRIAL COURT NO. CCL-474-14-F

----------

## MEMORANDUM OPINION[1]

----------

In four issues, Appellant Kyle[2] appeals the termination of his parental rights

to Alexis, the child who is the subject of this suit.  We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

[2]In accordance with rule 9.8, we refer to children and family members by aliases. Tex. R. App. P. 9.8 (b) & cmt.

# I. Factual and Procedural Background

## A. Appellant's background

Alexis was 17 months old at the time of trial. Alexis's parents were both 26 years old at the time of trial and already had substantial criminal records.

Mary, Alexis's mother, had been convicted of possession of methamphetamine and drug paraphernalia, theft, public intoxication, failure to stop and render aid, and driving with a suspended driver's license. Appellant testified to his criminal history as follows:

- In 2006, Appellant was convicted of the misdemeanor offense of possession of a prohibited weapon, a switchblade knife. He was sentenced to jail for 30 days, but his sentence was suspended and he was placed on community supervision.

- In October 2007, Appellant was convicted of racing on a public highway. He was ordered to pay a $750 fine.

- In 2009, Appellant pleaded guilty to the felony offense of possession of cocaine. He received deferred adjudication and spent six months in a court-ordered, alcohol treatment program as part of his community supervision. In August 2012, after Appellant was arrested for driving while intoxicated, the State proceeded to adjudication of the possession charge. He was thereafter found guilty of possession of a controlled substance and sentenced to one year in a state jail facility.

- In January 2010, Appellant was convicted of driving while intoxicated (DWI) and spent 90 days in jail.

- Later in 2010, Appellant was convicted of a second DWI. At the time of his arrest, Appellant was transporting his 15-year-old nephew—who was also intoxicated[3]—in the car. Appellant received a

---

[3]Appellant admitted that his nephew's blood alcohol level was twice the legal limit of 0.08. *See* Tex. Penal Code Ann. § 49.04 (West Supp. 2015).

suspended sentence and was placed on community supervision, the terms of which he later violated, resulting in eventual incarceration.

- In March 2011, Appellant was arrested for his third DWI. He was convicted and sentenced to 62 days in jail.

- In July 2012, Appellant was again arrested for DWI, this time with his girlfriend's three-year-old child in the vehicle. He pleaded guilty, was convicted of his fourth DWI—a state jail felony—and was sentenced to 12 months in a state jail facility.

- On November 6, 2013, Appellant was arrested for public intoxication after an incident that began with Appellant's making harassing telephone calls to Mary at her workplace and culminated in his arrest after he later appeared there smelling strongly of alcohol, speaking in a slurred manner, and wearing clothing on which he had urinated.

- Five days later, on November 11, 2013, Appellant was arrested in Oklahoma for his fifth DWI. Those charges were still pending at the time of trial in this case.

- On December 19, 2013, Appellant was charged with family domestic violence after he struck Mary, who was pregnant at the time, in the face during a Christmas shopping excursion. Appellant pleaded guilty and was convicted and sentenced to 62 days in county jail.

- Less than two weeks later, on December 30, 2013, he was arrested again, this time for evading arrest during an incident at his parents' home. Appellant pleaded guilty and was sentenced to five years' imprisonment.

- A few months later, Appellant was arrested for public intoxication after being observed inside a secured and gated business parking lot after midnight. As the police officer approached him, Appellant—who was described as stumbling around, smelling of alcohol with bloodshot eyes and slurred speech—repeatedly attempted to walk into the middle of the road, where oncoming cars were traveling. Asked at trial to explain why he had behaved in this manner, Appellant testified that he did not remember because he was so drunk at the time.

3

- On August 30, 2014, after a police officer tried to initiate a traffic stop, Appellant led police on a high-speed chase, reaching speeds as high as 130 miles per hour. Appellant was subsequently convicted of DWI and evading arrest and sentenced to five years' confinement for each conviction.

At the time of trial, Appellant was concurrently serving the five-year sentences arising out of the August 30, 2014 offenses, in addition to a 21-month sentence for a felony DWI conviction.

## B. Appellant's relationship with Mary

Although Appellant and Mary disagree as to how and when they initially met,[4] the record shows that their marriage was brief and tumultuous.

Shortly after Appellant was released from jail in August 2013, Appellant, Mary, and her then four-year-old daughter moved to Fredrick, Oklahoma, to live with Appellant's sister. They were married approximately three months later, on November 1, 2013, and they separated less than two months after that. At trial, Mary estimated that during that time period, Appellant committed more than 20 separate incidents of abuse, both physical and verbal, two of which resulted in the filing of criminal charges against Appellant. Mary testified that Appellant drank every day and would come home drunk at 3:00 or 4:00 in the morning, turn on the lights and wake up both Mary and her daughter by yelling at Mary and

_____

[4]According to Mary, the two met in 2011 while she was working as an exotic dancer in Wichita Falls and he was a regular customer. Appellant, on the other hand, testified that he and Mary became acquainted in 2012 when they were both incarcerated. According to Appellant, after another inmate gave Mary and Appellant each other's names, the two became pen pals and finally met in person in August of 2013, after they had both been released from jail.

4

calling her a "whore" and other names. Mary's daughter referred to Appellant as a "monster." According to Mary, during her relationship with Appellant, he "made her" have sex with his friends.

Less than three months after they wed, on January 10, 2014, Mary filed for an annulment of their marriage in the 30th District Court in Wichita County. Though she was pregnant with Alexis at the time, in her petition for annulment, Mary represented that no children of the marriage were expected.

In March or April of 2014, Mary contacted Appellee Inheritance Adoptions about placing Alexis for adoption. Although in April she met with Leslie Howard, the director of Inheritance Adoptions, she failed to show up for the follow-up appointments that were scheduled with the agency. In June, Mary's mother told Howard that Appellant's family was going to raise the baby, so Inheritance Adoptions closed the file.

After Mary gave birth to Alexis in August, a hospital social worker contacted Inheritance Adoptions on Mary's behalf, and Mary once again asked Inheritance Adoptions to place the baby for adoption. She also requested that Inheritance Adoptions not contact Appellant. Two days after Alexis's prospective adoptive parents, Walter and Valerie, took Alexis home from the hospital, Mary signed an affidavit of voluntary relinquishment of her parental rights.

When asked at trial how she reached the decision to place Alexis for adoption, Mary testified,

5

I didn't want her to ever have to deal with [Appellant] in any shape, form, or fashion. None. All of this is a bunch of heartache and lies. That's all it is. . . . I would rather give her a better life, and her never have to deal with him, than her to ever have to deal with him."

Approximately two weeks after Alexis's birth, Mary appeared before the judge of the 30th District Court regarding her petition for an annulment. At that hearing, she testified that no children were born during the marriage. Mary later explained at trial that because Appellant had made her have sex with his friends, "there was no telling who the father was," thus—even after inquiry by the judge at the annulment hearing—she did not reveal Alexis's birth because she "figured it had nothing to do with the marriage [she] was trying to get annulled." The annulment was granted.

At trial, Appellant testified that he did not learn of Alexis's birth until "a couple weeks" after she was born. After he was served with the termination suit on August 19, 2014, Appellant retained counsel, who filed a petition on his behalf seeking custody of Alexis. Appellant testified that he was motivated to seek custody because he was tired of being locked up in jail, and since at that point he had a daughter "to take care of," he decided to change his ways.[5] Three days

---

[5]Alexis was not Appellant's first child. Appellant testified at trial that he had a son with a prior girlfriend, a son whose birthdate he could not remember and for whom he provided no financial support. Charges of nonpayment of child support were pending against Appellant in Oklahoma at the time of trial. Appellant attributed his failure to pay child support to the fact that he had been incarcerated during part of the time the payments should have been made.

after filing his petition, Appellant was arrested for evading arrest and his sixth DWI charge referenced above.

## C. The termination proceeding

A petition to terminate Appellant's and Mary's parental rights to Alexis was filed by Inheritance Adoptions on August 15, 2014, in County Court at Law Number Two in Wichita County. On July 22, 2015, Appellant filed a motion to dismiss or motion to determine court of continuing jurisdiction in the termination case, alleging that Mary had perpetrated a fraud upon the court and that due to the prior annulment proceeding, the 30th District Court was the proper court of continuing jurisdiction. In his motion, Appellant requested that the county court at law judge dismiss the termination proceeding "and reassign [the] case to the true Court of Continuing Jurisdiction." No hearing was held and no ruling was made on that motion, but a few weeks after it was filed, Appellant's attorney moved to withdraw as his attorney.[6]

On September 23, 2015, after the trial court granted the motion to withdraw, a new attorney, Joseph Libby, entered his appearance on Appellant's behalf. The next day, Appellant filed a bill of review in the 30th District Court seeking to set aside the annulment. One day after that, he filed a motion in the county court at law proceeding requesting a continuance of the October 19, 2015 trial setting, a transfer of the termination proceeding to the 30th District Court,

---

[6]This was the second of Appellant's attorneys to withdraw. His first attorney withdrew in December 2014.

and, alternatively, an abatement of the termination proceeding pending resolution of the bill of review.

After the hearing on the motion, the trial court denied the relief sought in a letter ruling signed on October 9, 2015. In the letter, the trial court summarized the timeline of the case, noting the various delays that had occurred and explaining its ruling as follows:

> This case has been pending in the County Court at Law Number 2 for over fourteen months as of this date. [Appellant] has had ample time to complain about the jurisdiction of this court. Instead [Appellant] filed his own counter-petition in this court over one year ago.
>
> The fact of the matter is that I gave all of the parties including Mr. Martin—[Appellant]'s second attorney—approximately five months of notice of the jury trial which [Appellant] demanded in the County Court at Law Number [Two] by his pleading dated April 30, 2015.
>
> . . . .
>
> In the event that I were to grant [Appellant's] motion for continuance, then there is nothing to stop [Appellant] from firing Mr. Libby as the new jury trial date approaches and then hiring a fourth attorney who might yet again seek another continuance.
>
> It is in the best interest of all of the parties, especially this fourteen month old child, that this case be resolved with a jury trial during the week of October 19, 2015.

The trial court also added:

> I briefly conferred with Judge Brotherton [the trial judge of the 30th District Court] last night about the procedural posture of this case. Neither Judge Brotherton nor I have any objection to consolidating Cause Number CCL-474-14-F into the case in the 30th District Court. If so, then I can still call this case for jury trial on Monday, October 19, 2015, because the County Court at Law #2 has

8

concurrent jurisdiction with the 30th District Court over family law cases such as this one. Please advise accordingly.

Four days later on October 13, 2015, the trial court signed an order transferring the termination proceeding to the 30th District Court, consolidating it not into the pending bill of review action but the prior annulment proceeding, denying the continuance motion, and reciting that the termination proceeding "shall proceed to trial on October 19, 2015 before [the county court at law judge]."[7] Four days after that, however, the trial court vacated the order, including the denial of the motion for continuance, and ordered that only the termination action would proceed to trial in County Court at Law Number Two on an unspecified date.

## D. The trial

Jury trial began on January 11, 2016.[8] At trial, Appellant acknowledged that because he was currently incarcerated, he could not personally care for Alexis. However, he argued that his large family—including both of his parents

---

[7]The order included a "Consent to Transfer and Exchange of Bench" signed by Judge Robert Brotherton, the presiding judge of the 30th District Court.

[8]During the interim, Appellant filed a motion requesting the court to "make inquiry concerning American Indian Ancestry of the child" based on Appellant's claim that his "great grandfather is believed to be and is reported within the older family members to have been of American Indian Ancestry." In response, Inheritance Adoption gave notice to at least seven American Indian tribes and the Secretary of the Interior of the United States in accordance with the Indian Child Welfare Act. See 25 U.S.C.A. § 1912 (West 2013). Six of the tribes responded and indicated that Alexis was not eligible for enrollment in their tribes. The other tribes that were notified did not respond.

9

and his seven sisters, aged 25 to 46—could care for Alexis until he finished serving his sentences, maintaining that he would not be in jail for the rest of his life and that he would change.[9]  Appellant also acknowledged that although he had met Alexis when Walter and Valerie brought her to the jail to visit, he had no bond with her.

The jury found that Appellant's parental rights should be terminated, and the trial court signed the decree terminating the parent-child relationship between Appellant and Alexis on January 22, 2016.

## II. Discussion

Appellant brings four issues on appeal, none of which challenge the sufficiency of the evidence to support the termination of his rights to Alexis.  The first two issues raise jurisdictional questions related to the annulment proceeding and Appellant's bill of review related to the annulment.  Issue three argues that section 161.108 of the family code is unconstitutional, and Appellant's fourth issue challenges the constitutionality of section 161.001(1)(b)(Q) of the family code.

---

[9]When asked why he had not changed his ways after his first child was born, he testified, "Because my son has a—his mom takes care of him, you know, so he has somebody.  My daughter doesn't.  [Mary], she gave her up.  So really that leaves me to step up and man up, you know."  Appellant blamed his failure to change his ways after Alexis was born on the fact that Alexis was given up for adoption, saying, "[It] was kind of a hard hit, and I dealt with it the wrong way" through his addiction to alcohol.

## A. The annulment proceeding

In his first issue, Appellant argues that the trial court erred in vacating the order transferring the termination proceeding to the 30th District Court and exchanging benches with the presiding judge of the 30th District Court. In his second issue, Appellant argues that the trial court erred in "failing to accept jurisdiction of the annulment and bill of review."

Generally, we review a trial court's ruling regarding transfer or consolidation for an abuse of discretion. *See Hamilton v. Hamilton*, 280 S.W.2d 588, 591 (Tex. 1955) (noting that the trial court's actions on such procedural matters as consolidation will not be disturbed on appeal except for abuse of discretion). A trial court abuses its discretion if the court acts without reference to any guiding rules or principles, that is, if the act is arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004). However, we review a trial court's denial of a motion to transfer venue de novo. *Silverman v. Johnson*, 317 S.W.3d 846, 848 (Tex. App.—Austin 2010, no pet.) (considering complaint that trial court failed to transfer modification proceeding to the court of continuing, exclusive jurisdiction under Tex. Fam. Code Ann. section 155.001 (West Supp. 2015)). This is especially true, where, as here, the party seeking a transfer is challenging the trial court's subject matter jurisdiction. *See also Texas Dep't of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004) ("Whether a court has subject matter jurisdiction is a question of law.").

11

### 1. Order vacating transfer

Appellant argues that "[t]he proper jurisdiction for the suit to determine the issue of the custody of [Alexis] . . . is the 30th District Court" because that court heard the annulment proceeding. Because the 30th District Court had jurisdiction over the annulment proceeding, he argues, the county court at law was required to transfer the termination proceeding to the district court in accordance with sections 6.406 and 6.407 of the family code. Section 6.406 provides in relevant part that a petition for dissolution of a marriage must state whether there are children of the marriage, and if there are children of the marriage and they are not subject to the continuing jurisdiction of another court, the suit for dissolution of the marriage must include a suit affecting parent-child relationship (SAPCR) under Title 5. Tex. Fam. Code Ann. § 6.406 (West 2006). Section 6.407 requires that "[i]f a [SAPCR] is pending at the time the suit for dissolution of a marriage is filed, the [SAPCR] shall be transferred as provided by Section 103.002 to the court in which the suit for dissolution is filed." Tex. Fam. Code Ann. § 6.407 (West 2006); *see also id.* § 103.002(b) (West 2014) ("On a showing that a suit for dissolution of the marriage of the child's parents has been filed in another court, a court in which a [SAPCR] is pending shall transfer the proceedings to the court where the dissolution of the marriage is pending.").

Appellant's argument improperly conflates the annulment proceeding and the bill of review proceeding seeking to set aside the annulment. A bill of review is an independent, equitable proceeding brought by a party seeking to set aside

12

a prior judgment that is no longer subject to challenge by a motion for new trial or appeal. *Ross v. Nat'l Ctr. for the Emp't of the Disabled*, 197 S.W.3d 795, 797 (Tex. 2006); *Caldwell v. Barnes*, 975 S.W.2d 535, 537 (Tex. 1998). It is brought as a separate suit from the case in which the challenged judgment was rendered. *Morris v. O'Neal*, 464 S.W.3d 801, 805 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

Appellant's claims that he was not properly served with the annulment proceeding and that the annulment was fraudulently obtained are issues that would be properly decided in the bill of review proceeding. If proven, these allegations might operate to set aside the annulment previously granted in the 30th District Court. *See Beck v. Beck*, 771 S.W.2d 141, 141 (Tex. 1989) (holding that a party seeking to invoke a bill of review to set aside a final judgment must prove (1) a meritorious defense to the cause of action alleged to support the judgment; (2) an excuse justifying the failure to make that defense, which is based on the *fraud, accident, or wrongful act of the opposing party*; and (3) an excuse unmixed with the fault or negligence of the petitioner). Likewise, Appellant's complaint regarding noncompliance with family code section 6.406's requirement to include a SAPCR in any petition for dissolution of a marriage when there are children of the marriage is an issue that Appellant might raise in the bill of review proceeding to meet his burden of establishing a meritorious defense to the annulment action. *See* Tex. Fam. Code Ann. § 6.406; *see also Baker v. Goldsmith*, 582 S.W.2d 404, 408–9 (Tex. 1979) ("[A] prima facie

meritorious defense is made out when it is determined that the complainant's defense is not barred as a matter of law and that he will be entitled to judgment on retrial if no evidence to the contrary is offered.").

However, the mere filing of a petition for bill of review "does not affect the finality of the judgment which is sought to be set aside." *Schwartz v. Jefferson*, 520 S.W.2d 881, 889 (Tex. 1975). Assuming no plenary-power-extending postjudgment motions were filed in the annulment proceeding, the judgment granting the annulment, signed on August 13, 2014, became final 30 days later, on September 12, 2014.[10] *See* Tex. R. Civ. P. 329b. At that point, the annulment proceeding was no longer pending and the filing of Appellant's petition for bill of review in September 2015 did not operate to revive it. *See Schwartz*, 520 S.W.2d at 889.

---

[10]We have no evidence that any motions were filed that would have extended the district court's plenary-power jurisdiction. However, assuming such a motion was filed, the court's plenary power could have been extended to no later than February 25, 2015, and the judgment of annulment would have been final by that date at the latest. *See* Tex. R. Civ. P. 329b(c), (e) (providing that a motion for new trial or a motion to modify, correct, or reform a judgment is overruled by operation of law if it is not determined by a written order within 75 days of the judgment being signed, but the trial court retains its plenary power to grant a new trial or vacate, modify, correct, or reform the judgment for 30 days after the expiration of 75 days); Tex. R. Civ. P. 306a 4. (providing that upon a showing by the adversely affected party that it did not receive notice of the judgment within twenty days after the judgment was signed, the date on which all postjudgment time periods shall be calculated as beginning will be the date on which the party received actual notice of the signing of the judgment, but in no event shall such periods begin more than ninety days after the original judgment was signed).

The bill of review proceeding did not constitute an action for dissolution of Appellant's marriage, but rather was a separate action seeking to set aside the final judgment in another action that dissolved Appellant's marriage.[11]  *Id.* Because the petition for bill of review was not granted at any point during the termination proceedings, the annulment action remained final.  As such, section 6.407's requiring SAPCRs to be transferred to the court in which the pending suit for dissolution of the marriage was filed never came into play because under these facts, there was never any pending[12] dissolution proceeding with which the termination proceeding could or should have been consolidated, whether at the time of the initial request in July and September 2015, or by the time the termination order here was signed.  Thus, neither section 6.406 nor section 6.407 of the family code applies here.

For these reasons, the trial court did not err in vacating its order granting the transfer of the termination proceeding to the 30th District Court while it still

---

[11]The original annulment suit bore Cause No. 180,144-A; the cause number for the bill of review proceeding was 183,334-A.

[12]Cases cited by Appellant in support of his argument are distinguishable on the basis that a dissolution of marriage proceeding was pending at the time a transfer was requested.  *See Neal v. Avey*, 853 S.W.2d 707, 708 (Tex. App.—Houston [14th Dist.] 1993, writ denied) (holding transfer of adoption and termination proceeding to pending divorce proceeding was mandatory); *Ortiz v. Aranda*, 716 S.W.2d 692, 693 (Tex. App.—Corpus Christi 1986, no writ) (noting motion to modify child custody requested a transfer and consolidation of modification with pending divorce action); *In re Marriage of Allen*, 593 S.W.2d 133, 137 (Tex. Civ. App.—Amarillo 1979, no writ) (holding that transfer and consolidation of SAPCR with concurrently pending divorce proceeding was a mandatory, ministerial act).

15

had plenary power to do so. *See* Tex. R. Civ. P. 329b; *HCA Health Servs. of Tex., Inc. v. Salinas*, 838 S.W.2d 246, 248 (Tex. 1992) (holding that the trial court retained plenary jurisdiction to vacate its order transferring case for thirty days after the order of transfer was signed). We therefore overrule Appellant's first issue.

## 2. Failure to assume jurisdiction of the bill of review

Appellant's second issue argues that the trial court erred in failing to accept jurisdiction of the bill of review proceeding.[13] The Appellees[14] argue that Appellant failed to preserve this issue because he did not present it to the trial court.[15] Even if we were to assume, without deciding, that Appellant preserved

---

[13]Appellant's statement of his second issue also alleges that the trial court erred in not accepting jurisdiction of the annulment proceeding. In addressing Appellant's first issue, we have addressed his conflating of the annulment proceeding and the bill of review proceeding and established that the annulment proceeding was not pending at the time Appellant requested a transfer of the termination proceeding to the 30th District Court. Even if Appellant had requested the trial court to do so, it could not have taken jurisdiction over the annulment proceeding as it was no longer pending. *See*, Section 1.A., above.

[14]Appellees Inheritance Adoptions, Walter, and Valerie filed a joint response brief in this Court. References in the discussion section to the "Appellees" are therefore to all three parties unless otherwise limited.

[15]Appellant also asserts that the failure of the county court at law to assume jurisdiction of the bill of review deprived his parents, the grandparents of the child, the opportunity to intervene. In so arguing, Appellant relies upon outdated caselaw regarding a grandparent's standing to intervene. *See McCord v. Watts*, 777 S.W.2d 809, 812 (Tex. App.—Austin 1989, no writ) (holding that grandparents were entitled to intervene in SAPCR because the child's best interest was before the trial court and being litigated). First, in order to intervene in a SAPCR, the grandparents would be required to meet today's stricter standard to establish their standing to intervene. Tex. Fam. Code Ann. §

this issue, the answer is clear that the county court at law could not have assumed jurisdiction of the bill of review proceeding unless the 30th District Court had transferred the bill of review to the county court at law.

At the time of filing, only the 30th District Court had jurisdiction over the bill of review. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 504 (Tex. 2010) ("Because it is a direct attack, a bill of review must be brought in the court that rendered the original judgment, and only that court has jurisdiction over the bill."), *cert. denied*, 562 U.S. 1180 (2011). However, once jurisdiction attached in the 30th District Court, the bill of review could have been transferred to the county court at law, and the merits could have been decided there. *See Rodriguez ex rel. Rodriguez v. EMC Mortg. Corp.*, 94 S.W.3d 795, 797 (Tex. App.—San Antonio 2002, no pet.) ("Once jurisdiction has attached in the proper court . . . the case may be transferred to another court, and the transferee court has the authority to determine the merits of the bill of review.") (citing *Outlaw v. Noland*, 506 S.W.2d 734, 735 (Tex. App.—Houston [1st Dist.] 1974, writ ref'd n.r.e.)). But that did not happen here,[16] and as such, any attempt by Appellant to present the

---

102.004 (West 2014) (providing that a court may grant leave to intervene to "a grandparent or other person deemed by the court to have had substantial past contact with the child . . . if there is satisfactory proof to the court that appointment of a parent as a sole managing conservator or both parents as joint managing conservators would significantly impair the child's physical health or emotional development"). Second, *McCord* has no applicability here, as it relates to grandparent's rights to intervene in a SAPCR, not a bill of review proceeding.

[16]The short-lived order of transfer, which was signed on October 13, 2015, but set aside on October 19, 2015, states in both the heading and the body of the

17

bill of review to the county court at law is an impermissible collateral attack on the annulment judgment. *See, e.g., Outlaw*, 506 S.W.2d at 735 (holding that appellant's bill of review filed in the 129th District Court attempting to set aside summary judgment entered in the 165th District Court was an impermissible collateral attack because there was no showing that the jurisdiction of the 165th District Court was ever invoked).

Appellant dedicates over 20 pages of his brief to copying, verbatim, the opinion issued in *Ramsey v. Ramsey*, 19 S.W.3d 548 (Tex. App.—Austin 2000, no pet.), but it does not help him here.[17]  In that case, the court noted the difference between a void and a voidable order:

> If a court having potential jurisdiction over a case renders a judgment that is regular on its face and recites that the court's potential jurisdiction has been invoked, then the judgment is voidable, not void, and may be set aside only by a direct attack.

_____

order that it transferred the termination proceeding into Cause No. 180,144-A, the annulment action, not into Cause No. 183,334-A, the bill of review proceeding.

[17]The mother and father in *Ramsey* were divorced in 1994 by a Navarro County court and the father was named the sole managing conservator of their son. *Id.* at 549.  They later reconciled in 1996, but in 1999, father left mother unexpectedly and moved from Austin to Plano with their son. *Id.* at 549–50. Mother then filed an application for writ of habeas corpus, asserting that she was entitled to custody in accordance with an order issued by a Williamson County court in 1991 in a suit filed by the attorney general prior to the divorce. *Id.* at 550. Mother contended that the Williamson County court was the court of continuing, exclusive jurisdiction over the child and, as a result, the Navarro County court lacked jurisdiction to enter orders affecting the child in the 1994 divorce action. *Id.*  The Austin Court of Appeals disagreed and held that the Navarro County court's order was facially valid and therefore voidable, not void, and could not be set aside in a subsequent suit by collateral attack. *Id.* at 553.

18

Thus, a divorce decree that is valid on its face and has not been appealed cannot be set aside in a subsequent suit by collateral attack.

*Id.* at 552–53 (internal citations omitted).[18] Appellant has not established that the order granting the annulment is facially void and therefore subject to a collateral attack. In fact, Appellant even admits in his brief that "[t]he judgment of the 30th District Court is voidable not void." Thus, the annulment decree is subject only to direct attack by bill of review, as was filed in the 30th District Court. Since the bill of review proceeding was not transferred to County Court at Law Number Two, the county court could not have properly assumed jurisdiction over it. We therefore overrule Appellant's second issue.

## B. Constitutionality of section 161.108 of the family code

In his third issue, Appellant argues that section 161.108 of the family code is unconstitutional. *See* Tex. Fam. Code Ann. § 161.108 (West Supp. 2015). Section 161.108 of the family code is titled "Release of Child from Hospital or Birthing Center" and provides:

> Before or at the time an affidavit of relinquishment of parental rights under Section 161.103 is executed, the mother of a newborn child may authorize the release of the child from the hospital or birthing center to a licensed child-placing agency, the

---

[18]The pleadings in the Ramseys' Navarro County divorce action stated that there were no court orders in place affecting the child and "[b]ecause these allegations were never challenged, no further inquiry was necessary." *Id.* at 553 (noting that Tex. Fam. Code Ann. section 155.101(a) (West Supp. 2015) only requires the court or parties to request identification of the last court with continuing, exclusive jurisdiction of the child *if* these facts are not alleged or are disputed by the pleadings).

19

Department of Family and Protective Services, or another designated person.

*Id.* § 161.108(a). This statute requires that the release must be in writing, witnessed by two credible adults, and verified. *Id.* § 161.108(b). A hospital or birthing center must comply with the terms of such a release without requiring a court order. *Id.* § 161.108(c).

Appellant argues that section 161.108 is unconstitutional because it "does not require, or allow, his consent for the placement of the child and does not provide any process by which he could contest the placement of the child." In response, Appellees argue that this issue is not ripe because there is no evidence in this case that a section 161.108 release was used or that the use of any such release adversely affected Appellant. As such, Appellees contend that Appellant does not have standing to assert that section 161.108 is unconstitutional because he did not sustain any injury. We agree.

Standing is a necessary component of subject matter jurisdiction. *Barshop v. Medina Cty. Underground Water Conservation Dist.*, 925 S.W.2d 618, 626 (Tex. 1996). In order for a party to have standing to challenge a statute, the plaintiff (1) must suffer some actual or threatened injury under the statute and (2) must contend that the statute unconstitutionally restricts the plaintiff's own rights. *Id.* (citing *Texas Workers' Compensation Comm'n v. Garcia*, 893 S.W.2d 504, 518 (Tex. 1995)). Like standing, ripeness implicates subject matter jurisdiction and "emphasizes the need for a concrete injury for a justiciable claim to be

20

presented." *Patterson v. Planned Parenthood of Hous. & Se. Tex., Inc.*, 971 S.W.2d 439, 442 (Tex. 1998). Standing, however, "focuses on the question of who may bring an action," whereas "ripeness asks whether the facts have developed sufficiently so that an injury has occurred or is likely to occur, rather than being contingent or remote." *Id.* (citing *Barshop*, 925 S.W.2d at 626–27). Standing and ripeness overlap in many cases. *Id.*

In the record before us, there is no evidence that an affidavit such as that described by section 161.108 of the family code was signed by Mary or otherwise used.[19] Indeed, in his reply brief to this court, Appellant argues that because the Appellees cannot point to any "valid law" that would "permit the release of the child in this case . . . without notifying the birth father," we "must assume that [Alexis] was released pursuant to Section 161.108."

We disagree. We cannot decide constitutional issues on a broader basis than the record allows. *Parent v. State*, 621 S.W.2d 796, 797 (Tex. Crim. App. [Panel Op.] 1981); *Kircus v. London*, 660 S.W.2d 869, 872 (Tex. App.—Austin 1983, no writ). As the party challenging the constitutionality of section 161.108, Appellant was required to show that the statute was unconstitutionally applied to him. *See Cty. Court of Ulster Cty., N.Y. v. Allen*, 442 U.S. 140, 154–55, 99 S. Ct. 2213, 2223 (1979) ("A party has standing to challenge the constitutionality of a

---

[19]In presenting this argument to the trial court, Appellant merely asserted that section 161.108 was unconstitutional, but did not assert that such an affidavit was used or direct us to any evidence that would support such an assertion.

21

statute only insofar as it has an adverse impact on his own rights."); *cf. Ex parte Tamez*, 4 S.W.3d 366, 367 (Tex. App.—Houston [1st Dist.] 1999, no pet.) (holding that appellant's argument that a section of the penal code was unconstitutional was not ripe because the record did not show it would be applied to her). Without any evidence that a section 161.108 affidavit was used against Appellant to his injury, Appellant lacks standing to challenge the constitutionality of section 161.108. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136 (1992) ("[A] plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized and (b) 'actual or imminent, not conjectural or hypothetical.'" (internal citations omitted)). Indulging in the assumption that an affidavit was used here could result in an advisory opinion, which we are not empowered to issue. *Patterson*, 971 S.W.2d at 443.

Because Appellant has not demonstrated standing to challenge the constitutionality of family code section 161.108, we overrule his third issue.

## C. Constitutionality of section 161.001(b)(1)(Q) of the family code

In his fourth and final issue, Appellant argues that section 161.001(b)(1)(Q) is unconstitutional because it violates the prohibition of cruel and unusual punishment. U.S. Const. amend. VIII; Tex. Const. art. I, § 13.

Section 161.001 provides various grounds for involuntary termination of a parent-child relationship. Tex. Fam. Code Ann. § 161.001 (West Supp. 2015). Appellant complains of subsection Q, which provides for termination on the basis

22

that there is clear and convincing evidence that the parent has "knowingly engaged in criminal conduct that has resulted in the parent's: (i) conviction of an offense; and (ii) confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition." *Id.* § 161.001(b)(1)(Q).

The decree terminating Appellant's parental rights did not specify which ground under section 161.001(b)(1) served as the basis for termination. However, the jury was instructed that it should terminate the parent-child relationship if it found by clear and convincing evidence that "at least one of the following events has occurred:" (1) Appellant engaged in conduct or placed Alexis with persons who engaged in conduct that endangered Alexis's physical or emotional well-being, *see* Tex. Fam. Code Ann. § 161.001(b)(1)(D)–(E); (2) Appellant was convicted of an offense and imprisoned for not less than two years from the date the petition was filed, *see id.* § 161.001(b)(1)(Q); or (3) Appellant knowingly abandoned and failed to provide adequate support to Mary during her pregnancy and continuing through birth, *see id.* § 161.001(b)(1)(H). The jury was not instructed to, and did not, specify on which ground they based their decision. The record does not indicate that Appellant objected to this broad-form submission. *See In re B.L.D.*, 113 S.W.3d 340, 354–55 (Tex. 2003) (holding that objection to broad-form submission of grounds for termination is waived where it is not presented to the trial court); *see also Tex. Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex. 1990) (holding that submission of broad-form

23

question to jury concerning whether the parent-child relationship should be terminated did not violate parent's due process right).

Appellant does not challenge the sufficiency of the evidence to support any of the three grounds of termination upon which the jury may have based their decision. "Only one predicate finding under section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). There was such a finding in this case. Therefore, we need not address Appellant's argument that subsection Q violates the prohibition against cruel and unusual punishment. *Id.* (noting that it need not reach the appellant's complaint regarding the sufficiency of evidence to support termination ground where he did not challenge the sufficiency of the evidence to support his termination based upon subsection Q),[20] *see also Flowers v. Tex. Dep't of Human Res.*, 629 S.W.2d 891,

---

[20]We note, however, that the Texas Supreme Court in *A.V.* held that the termination of an individual's parental rights is not punishment. *Id.* at 360–63 (holding that subsection Q was not unconstitutionally retroactive because it is not additional punishment). In so holding, the supreme court observed that the primary focus of a termination suit is protecting the best interest of the child and that "the rights of natural parents are not absolute; protection of the child is paramount. . . . The rights of parenthood are accorded only to those fit to accept the accompanying responsibilities." *Id.* (quoting *In re J.W.T.*, 872 S.W.2d 189, 195 (Tex. 1994)); *see also In re A.B.*, 437 S.W.3d 498, 504 (Tex. 2014) ("The purpose of terminating parental rights . . . is not to punish parents or deter their 'bad' conduct, but rather to protect the interests of the child."); *Malone v. State*, 864 S.W.2d 156, 159 (Tex. App.—Fort Worth 1993, no pet.) (noting that termination of parental rights is not a "penalty" and "the termination of parental rights is remedial in nature and relates to the State's interest in protecting abused and neglected children, not punishment of the parent.").

893 (Tex. App.—Fort Worth 1982, no pet.) (holding that appellant's evidentiary points attacking ground for termination finding that she had allowed the child to remain in conditions which endangered its physical or emotional well-being did not need to be addressed where appellant did not challenge trial court's finding that she had endangered the child's physical and emotional well-being).   We therefore overrule Appellant's fourth issue.

### III.  Conclusion

Having overruled each of Appellant's four issues, we affirm the judgment of the trial court.

/s/ Bonnie Sudderth
BONNIE SUDDERTH
JUSTICE

PANEL:  WALKER, MEIER, and SUDDERTH, JJ.

DELIVERED:  August 4, 2016